523 A.2d 779

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Walter CARTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1987.

Filed April 2, 1987.

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge:

Walter Carter was tried by jury and was found guilty on two counts of simple assault.[1] On May 9, 1985, he was sentenced to two consecutive, two year terms of probation. On August 16, 1985, Carter was arrested and charged with aggravated assault, simple assault, recklessly endangering another person, and possession of an instrument of crime. On October 21, 1985, Carter and his attorney appeared before the court for a preliminary or Gagnon I hearing to enable the court to determine whether probable cause existed for believing that Carter had violated the terms of his probation by committing one or more new offenses. During the course of this hearing, the court learned that Carter had failed to report as ordered during probation. Upon learning this fact, the court immediately revoked probation and imposed a sentence requiring Carter to serve concurrent terms of imprisonment for not less than one year nor more than two years.[2] The later charges, which had led to the Gagnon I hearing, were subsequently dismissed by the Municipal Court of Philadelphia.

Carter filed an appeal from the order revoking probation and imposing a sentence of imprisonment. He argues (1) that the court erred when it summarily revoked probation without prior written notice that he was being accused of technical violations; and (2) that because he cannot now receive a speedy revocation hearing, the convictions for simple assault should be vacated and he should be discharged.

■ We must initially determine whether, as the Commonwealth contends, the alleged irregularity in the probation violation proceeding is moot. The sentence of imprisonment imposed for probation violation has been fully served, and the parole period has now expired. Because there are

1. The same jury acquitted Carter of two counts of robbery, two counts of aggravated assault, two counts of theft, and one count of possessing an instrument of crime.

2. Because Carter had previously been confined to jail for seventeen months while awaiting trial on the initial charges, however, he was released on parole immediately.

collateral consequences which remain, however, we conclude that the validity of the probation violation adjudication is not a moot issue.

In *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971), the Supreme Court held that when a criminal sentence has been fully satisfied, a collateral attack upon the underlying conviction is not moot and can be considered if it is shown that the criminal sentence may directly affect any subsequent criminal prosecution or conviction. This rule was later extended to have application even if one could not show any criminal consequences, but could show actual or potential civil consequences. See: *Commonwealth v. Rohde*, 485 Pa. 404, 402 A.2d 1025 (1979); *Commonwealth v. Doria*, 468 Pa. 534, 364 A.2d 322 (1976). See also: *Commonwealth v. Markley*, 348 Pa.Super. 194, 501 A.2d 1137 (1985). Although these cases involved attacks upon the underlying convictions, the principles announced therein are equally applicable where, as here, an attack is made upon an order revoking probation and imposing a sentence of imprisonment. See: *Nickens v. Board of Probation & Parole*, 93 Pa.Cmwlth. 313, 317 n. 8, 502 A.2d 277, 278 n. 8 (1985) (future consequence rule applied where challenge involved order revoking parole). See also: *Commonwealth v. Adams*, 350 Pa.Super. 506, 519, 504 A.2d 1264, 1271 (1986) (same principles of mootness applied where challenge involved legality of sentence); *Commonwealth v. Kelly*, 274 Pa.Super. 242, 245, 418 A.2d 387, 388 (1980) (collateral consequence rule applied where defendant challenged sentencing court's interpretation of his sentence).

In the instant case, the revocation of Carter's probation and the subsequent imposition of sentence would have potential criminal consequences if Carter were subsequently to be convicted and sentenced for another offense. The fact that it had previously been determined that he was a poor probation risk would most certainly appear in a presentence report and would be given consideration in imposing sentence for a new offense. The validity of the probation violation proceedings, therefore, is not moot.

■ "[D]ue process requires that a probationer receive written notice of the claimed probation violations prior to commencement of the revocation hearing...." *Commonwealth v. Quinlan*, 488 Pa. 255, 258, 412 A.2d 494, 496 (1980), citing *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973). See: *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Commonwealth v. Kane*, 315 Pa.Super. 212, 461 A.2d 1246 (1983). The purpose of requiring prior written notice "is to ensure that the ... probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that ... probation is no longer an effective rehabilitative tool and should be revoked.... [T]he requirement bears directly on the ability to contest revocation." *Commonwealth v. Perry*, 254 Pa.Super. 48, 52, 385 A.2d 518, 520 (1978).

In the instant case, the record demonstrates that Carter received no notice of any alleged technical violation of his probation before he appeared before the court. Both he and his attorney appeared at the hearing believing it to be a preliminary, or "Gagnon I", hearing,[3] for the purpose of determining whether there was probable cause to believe that he had violated the terms of probation by committing another crime. The record reveals that Carter's probation officer also believed this to be the purpose of the hearing. See: N.T. 10/21/85 at 2. When the hearing court changed direction and, over defense objection, determined that Carter had committed a technical violation by failing to report as ordered, the court committed error. The revocation of probation and the subsequent judgment of sentence, therefore, will be vacated.

■ Carter argues further that because he cannot now receive a speedy revocation hearing we should not remand for a new hearing, but should discharge him. We disagree. " 'When a defendant has appealed from the judgment of sentence resulting from a probation revocation and obtains a new hearing, the court focuses on the period after remand

3. See: *Gagnon v. Scarpelli, supra.*

in assessing whether a hearing has been held with reasonable promptness.' " *Commonwealth v. Ballard,* 292 Pa.Super. 129, 133, 436 A.2d 1039, 1041 (1981), quoting *Commonwealth v. Honeyblue,* 276 Pa.Super. 107, 111, 419 A.2d 118, 120 (1980). See: *Commonwealth v. Martin,* 262 Pa.Super. 113, 118 & n. 4, 396 A.2d 671, 673 & n. 4 (1978). Therefore, Carter's right to a speedy hearing under Pa.R.C.P. 1409 will not be violated by a remand to the hearing court for another probation violation hearing.

■ Moreover and in any event, the failure to receive a speedy hearing, as required by Pa.R.Crim.P. 1409, would not entitle appellant to a reversal of the judgment of sentence entered following jury trial and conviction. A defect in the probation violation hearing impairs only the validity of the order revoking probation; it can have no effect on the guilty verdict or the sentence of probation entered thereon.

The judgment of sentence for probation violation is reversed, and the case is remanded for a new hearing on Commonwealth allegations that appellant violated the terms and conditions of his probation. Jurisdiction is not retained.